## Town of Normal v. Gresham.

1. *Negligence—Use of Ordinary Care.*—The degree of care used by a person in passing along a defective sidewalk and avoiding obstructions therein, is a question for the jury.

2. *Cities—Care and Negligence.*—A city which leaves obstructions in its sidewalks for months, to the peril, in dark nights, of those who do not know of them, can not, with grace, insist that those who do, shall on every occasion, when about to pass them, dismiss from their minds all interesting subjects of thought and hunt for hidden points of danger.

3. *Practice—Bill of Exceptions.*—The bill of exceptions is a pleading of the appellant; it is also a certificate of the trial judge and a part of the record, and not subject to contradiction.

**Memorandum.**—Action for damages. Appeal from a judgment for plaintiff, rendered by the Circuit Court of McLean County; the Hon. THOMAS F. TIPTON, Circuit Judge, presiding. Heard in this court at the November term, 1892, and affirmed. Opinion filed June 5, 1893.

The statement of the facts is contained in the opinion of the court.

APPELLANT'S BRIEF, R. L. FLEMING AND A. E. DeMANGE, ATTORNEYS.

If the defendant had traveled over the walk in question before and knew of the obstruction over which she claims to have stumbled, it was her duty at the time of the alleged

injury, to have used a degree of care and caution commensurate with whatever known danger there was in the use of the walk at night.   Chicago, St. L. & P. R. R. Co. v. Hutchinson, 120 Ill. 587.

Appellee's Brief, Benjamin & Morrisey, Attorneys.

One may go upon a sidewalk known to be out of repair and dangerous, and yet if injured, may have a right of recovery, if ordinary and reasonable care is used.   Joliet v. Conway, 17 Ill. App. 577; Ellis v. Peru, 23 Ill. App. 35; Bloomington v. Chamberlain, 104 Ill. 268; Village of Clayton v. Brooks, 31 Ill. App. 62; City of Sandwich v. Dolan, 34 Ill. App. 199.

The question whether ordinary or reasonable care was exercised, is a question of fact for the jury.   Village of Clayton v. Brooks, 31 Ill. App. 62; City of Sandwich v. Dolan, 34 Ill. App. 199; City of Rockford v. Hildebrand, 61 Ill. 155, 160; L. S. & M. S. Ry. Co. v. O'Connor, 115 Ill. 255; Babcock v. R. R. Co., 150 Mass. 467.

Opinion of the Court, Pleasants, J.

June 1, 1891, the trustees of the town passed an ordinance for a brick walk, four feet wide, to be laid on the west side of Broadway, a street considerably traveled, along a block which was the third from the center of business.   In pursuance thereof, in the fall following, the old plank walk of the same width was removed and the space it covered fitted for the new one proposed, by an excavation which was filled with rough cinders for a foundation.   Along the middle line of this space there came, by use, to be a beaten path, a foot or less in width, such as would be made by persons passing singly.   Parallel with the inner or west line of this space and a few inches west of it, was an old picket fence, which had been nearly ready to fall and was propped by three stakes, set in the cinders at a proper angle, and within six inches of the beaten path.   There was no walk, improved or used on the other side of the street.   Returning from a religious meeting on the night of February 17, 1892,

appellee struck her foot against one of these props and fell, breaking the radius of her right arm just above the wrist, straining the ligaments, and injuring her shoulder. For what she so suffered she recovered judgment in this action on a verdict for $700; and the defendant, being denied a new trial, took this appeal.

The case went to the jury upon the evidence for the plaintiff, the defense introducing only one witness, whose testimony was confined to a description of the locality, and a plat or sketch of the sidewalk. For more than three months next preceding the accident the situation was substantially as above described.

Appellee was forty-eight years of age and a little nearsighted. The night was quite dark. Near each end of the block was a street lamp, burning oil. They were about four hundred feet apart and afforded but little aid to sight for more than fifty. Plaintiff was walking slowly, alone, and about four feet behind two ladies abreast. Others were at a little distance behind her. The place of the accident was nearly midway between the lamps. There was nothing noticed in her manner as showing that she was or was not taking particular care to keep in the beaten path or otherwise avoid the obstructions. She alone could know her thoughts.

On cross-examination she testified that she was familiar with this walk and had often noticed the stakes—had passed over it frequently for nearly or quite a year—perhaps ten or twelve times in that month, attending upon the protracted meeting then being held. The following portion of it is taken from the record:

"Q. What were you doing as you went along? A. I can't tell you.

Q. Didn't two people, just ahead of you, walk around the prop? A. I don't know.

Q. How far ahead of you were they? A. A few feet— three or four feet.

Q. You could have seen them if they walked out to go around the prop? A. I don't know that I was paying any attention.

Town of Normal v. Gresham.

Q. Were you paying any attention to anything? A. I am usually trying to see where I am walking.

Q. Can you tell whether you was doing that that night or not? A. I can't say, but I think I was.

Q. Isn't it true you were not thinking about where you were walking at all? A. No, sir; I don't know as it was.

Q. You say you don't know that it is true; do you know it is not true? A. I went through such an experience I forget.

Q. Do you know it is not true that you were paying attention to where you were walking? A. I don't understand your question. I think I was paying attention.

Q. What makes you think it? A. Because I am usually very careful.

Q. You knew that the prop was there? A. It was too dark to see them that night.

\*　　\*　　\*　　\*　　\*　　\*　　\*

Q. Can you say you were paying any attention when you fell? A. If I should say anything, I should say I was. I think I was paying attention. I am sure I was, because I always am.

Q. Isn't it true, that without thinking exactly where you were walking, your mind was on what you had heard at church? A. No, sir; I couldn't say that it was.

Q. Can you say it is not true? A. I was thinking about the walk. I am sure I was, because I always am."

It is claimed that in view of the circumstances, and particularly of her knowledge of the walk and its obstructions, she failed to take ordinary care for her own safety; and her own testimony, as above quoted, is mainly relied on for proof. She is charged with first admitting her want of attention, and then dishonestly attempting to "hedge;" growing bolder as she proceeded from "I don't know that I was paying any attention," to the final statement "I am sure I was."

The record itself does not so impress us, and her appearance and manner on the witness stand were to the jury important means of judgment as to her candor and truth-

fulness which we are denied. It seems clear that the admission referred to the action of the two ladies ahead. Nor did she pretend to state, as a fact positively remembered, that she paid attention to where she herself was walking, but only as a matter of inference and belief from the constancy of her habit. Perhaps this would not have been proper evidence in chief, but is not directly brought out; it came out naturally enough on the cross-examination, without objection. If it did not show actual care, it failed to show the want of it. The degree of care she used was a question for the jury. They had before them all that was known and remembered of her conduct and the circumstances. There appears to have been nothing uncommon or particularly noticeable in it; nothing that was not to have been expected, except the accident; and that, of itself, does not tend to prove negligence on her part. But the presence of the prop, as placed and left for so long a time, was evidence of it on that of the town. Appellee used the walk on the occasion in question about as others did who also knew its condition, and as she, with such knowledge, had been accustomed to use it. The difference is not shown to have been more than that she was walking on a line a few inches further west, without knowing or suspecting it, because of the darkness. A city that leaves such obstructions in its sidewalks for months, to the peril, in dark nights, of those who do not know of them, can not, with much grace, insist that those who do, shall, on every occasion, when about to pass them, dismiss from their minds what they have just heard at church, or other important or interesting subjects of thought, and hunt for the hidden point of danger. It should present itself in the night as well as by day, or be presented by suitable signals, to all who take such observation of the pathway before them as is usual in like cases. Ordinary care to avoid a known danger is proportioned to the danger, and therefore may often be of a very high degree. But reasonable care to know a danger, which is actually unknown, but might be known by the exercise of a very high degree of care, is not

so proportioned. Here the obstruction was well known to appellee, but the place or point of it was not, at the time of the accident. We think there was evidence sufficient to support the finding that to see and avoid it, she used ordinary care under the circumstances. In City of Sandwich v. Dolan, 34 Ill. App. 204, it appeared that the plaintiff as well knew the condition of the walk where she fell, and the evidence of the care she used was her own statement that she knew the boards upon it were loose and always looked out for it, but could not say what particular thought was in her mind at the precise moment the injury occurred; which was held sufficient. The judgments of the Circuit and Appellate Courts in that case, were reversed by the Supreme Court, but not upon any ground affecting the question here considered. In City of Rockford v. Hildebrand, 61 Ill. 155, the defect complained of, was in the connection of the sidewalk with an alley crossing, some six or eight inches lower, which was made by a plank between them sloping at an angle of about forty-five degrees. The injury was caused by the slipping of plaintiff's foot in stepping onto this inclined plank as he was passing along the sidewalk in a January night time when there was snow and ice upon the ground. As to his care he stated only that " he was walking along as he always walked."

An instruction was asked for the city that this " was not evidence that he was using due care," predicated upon the hypothesis that the walk was in an unusually icy and slippery condition, which was refused. The Supreme Court held that, although this condition would require a higher degree of care than would otherwise be called for, yet the instruction was properly refused; that the statement was evidence tending to show ordinary care under the circumstances; and therefore affirmed the judgment. In the case at bar, the evidence for the plaintiff was at least as strong. Besides her confident belief that she was paying attention to the walk, she probably supposed, at the time, and reasonably supposed, that she was following in the path of the ladies just ahead of her, although she did not remember that she paid any attention to know whether they did or did not

turn out to avoid the prop which tripped her, and we see no reason for interference with the finding of the jury upon this question. They were fully and properly instructed on that subject.

That was the only matter of fact in dispute. No complaint is made of any instruction given for the plaintiff, except the first. That is admitted to be correct, "taken as a whole," but is said to be misleading upon the main question, because a qualification put in near the end was not nearer the beginning. It declared the duty of the town to use reasonable care to have its sidewalks in reasonably safe condition for all persons using them, and the qualification was that such use should be with reasonable or ordinary care, for their own safety. We think it could not have misled the jury if it had been entirely omitted in that one, since it was clearly made in others, given for the plaintiff, and was the burden of most of those given for the defendant. The necessity of the qualification has been expressly denied by the Supreme Court, in the late case of The City of Sandwich v. Dolan, 141 Ill. 430.

At the close of the cross-examination appellee was asked: "Isn't it true that, through your attorney, you refused to permit other physicians, employed by the defendant, to examine your arm, to ascertain the extent of the injury? Upon which the court said: "I will not allow that at this time. I think the application is to be made in court, and she was not bound to act at that time." Besides, the question concedes that she did not refuse; that it was the act of her attorney. Defendant excepted, and though counsel do not here insist it was error, complaint is made that the bill of exceptions contains matter in that connection which is not true and may prejudice appellant. The bill of exceptions is a pleading of appellant. It is also a certificate of the trial judge and a part of the record, and not subject to contradiction. The matter referred to, however, excites no prejudice here. We approve the ruling of the court (Parker v. Enslow, 102 Ill. 273) and see no sufficient reason for reversing the judgment. It will therefore be affirmed.